UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN PAUL YOUNG, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:13-cv-02016-TWP-MJD ) |
| CAROLYN W. COLVIN Acting Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Plaintiff John Young ("Young") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

**I. Background**

Young filed his applications for DIB and SSI on January 24, 2011, alleging an onset of disability of May 15, 2008 due mainly to his vision problems.[1] [R. at 60.] Young's applications were denied initially on March 21, 2011 and denied on reconsideration on May 5, 2011. Young timely requested a hearing, which was held before administrative Law Judge Blanca B. de la

---

[1] Young recited the relevant factual and medical background in his opening brief. [*See* Dkt. 20.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 25.] Because these facts involve Young's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs, but will articulate specific facts as needed below.

1

Torre ("ALJ") on October 5, 2012. The ALJ's October 24, 2012 decision also denied Young's applications for DIB and SSI, and on November 14, 2013 the Appeals Council denied Young's request for review, making the ALJ's decision the final decision for the purposes of judicial review. Young timely filed his complaint with this Court on December 20, 2013, which is now before the Court.

## II. Legal Standard

To be eligible for SSI, a claimant must have a disability, pursuant to 42 U.S.C. § 416. Therein, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the Commissioner determines that the claimant's impairment meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as

2

adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Young met the insured status requirements of the Act through December 31, 2012 and has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date. [R. at 24.] At step two, the ALJ found that Young's congenital blindness in the right eye, mood disorder, antisocial personality disorder, and episodic alcohol abuse are severe impairments, as defined by the Act. [R. at 25.] However, at step three the ALJ found that Young does not have an impairment that meets or medically equals one of the applicable listed impairments: Listing 1.02 for his history of clavicle fracture, Listing 2.02 for his visual impairments, Listings 12.04, 12.08, and 12.09 for his mental impairments. [R. at 25-27.]

After step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Young has the residual functional capacity to perform "a limited range of light work." [R. at 27.] Specifically, the ALJ found the following limitations to Young's ability to perform light work:

> [H]e can lift, carry, push/pull 20 pounds occasionally and 10 pounds frequently; sit for two hours at a time and a total of six hours in an eight-hour workday; stand

3

>for two hours at a time and a total of six hours in an eight-hour workday; and walk for two hours at a time and a total of six hours in an eight-hour workday. He occasionally can climb stairs and ramps, but never climb ladders, ropes or scaffolds. He occasionally can balance, stoop, crouch, and kneel, but never crawl. The claimant occasionally can reach overhead. The claimant can never perform fine detail visual work, specifically, he cannot work with printed materials with less than 12-point font, and never work with items smaller than a golf ball. He is able to understand short, simple, and repetitive instructions; sustain attention/concentration for two-hour periods per eight-hour workday on short, simple, and repetitive tasks; and use judgment in making work-related decisions commensurate with the aforementioned work. He should avoid all exposure to heights and machinery. He cannot do any nighttime driving.

[R. at 27-28.] In determining these limitations, the ALJ gave great weight to the opinions of the State agency psychologist Dr. Hill and the State agency physician Dr. Corcoran, which was well-supported by the findings and observations of Dr. Johansen and the consultative ophthalmologist. [R. at 32.] The ALJ acknowledged Young's claim that his lack of a home and general resources limit his activities of daily living, as he is unable to seek regular medical care such as prescription medications and glasses. [*Id.*] However, the ALJ then wrote that Young's visual impairment "has been appropriately considered in the residual functional capacity by limiting the claimant to no fine-print work smaller that [sic] a 12-point font or items smaller than a golf ball." [*Id.*] Additionally, Young's claims that lifting objects over twenty to twenty-five pounds increases his shoulder pain were incorporated into the residual functional capacity (RFC) by limiting Young "to only occasionally lifting 20 pounds and frequently lifting 10 pounds."

At step four, the ALJ found that Young is unable to perform any of his past relevant work with the aforementioned limitations. [R. at 33.] However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Young can perform, including a table with each of the three jobs named by the vocational expert (VE), its skill level, its exertional level, and the number of jobs existing in both the State of Indiana and throughout

the country as a whole. [R. at 33-34.] Based on these findings, the ALJ concluded that Young is not disabled, as defined by the Social Security Act. [R. at 34.]

## IV. Discussion

The sole issue raised on appeal is whether or not the ALJ committed reversible error by drawing a negative inference against Young's credibility because of his failure to seek treatment for his impairments. [Dkt. 20 at 9-11.] When an ALJ is assessing a claimant's credibility, pursuant to Social Security Ruling (SSR) 96-7p "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding **where the claimant does not have a good reason for the failure or infrequency of treatment**." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (emphasis added). However, unless the ALJ "has explored the claimant's explanations as to the lack of medical care," the ALJ "must not draw any inferences" regarding the validity of the claimant's complaints or impairments. *Id.* Thus, in a case where the ALJ drew a negative inference regarding a claimant's credibility from his failure to seek treatment without questioning the claimant and without noting that the record reflected the claimant's inability to pay as the reason for such noncompliance (one such "good reason"), the Seventh Circuit found error in the ALJ's decision. *See id.* Because the ALJ is in the "best position to determine the credibility" of the claimant and other witnesses, the Seventh Circuit will only overturn a credibility determination when it is "patently wrong." *Id.* at 678.

In this matter, the only two facts that are akin to those in *Craft* are (1) the ALJ observed that there is no medical evidence in the record between the alleged onset date in 2008 and the medical consultations ordered by the Disability Determination Bureau in 2011 [R. at 32] and (2) the ALJ did not give great weight to Young's allegations that he can only use his left eye for a maximum of fifteen minutes before his vision becomes blurred and that his vision in his left eye

5

has worsened since the 2011 [Dkt. 20 at 4]. However, although Young claims that the ALJ "improperly uses the fact that the record lacks medical records and Mr. Young has not pursued treatment **in order to** find him not credible," he does not substantiate this claim with any evidence that the ALJ found Young to not be credible **because** of the lack of medical evidence, as seen in *Craft*. [*Id.* at 9.] The Court has examined the ALJ's reference to the lack of record and finds that such discussion is purely a recitation of fact from which the ALJ does not patently draw any conclusions. [*See* R. at 32.] Without having made an "inference" at all, let alone a negative one, the ALJ cannot have erred under the standard set forth in *Craft*.

Additionally, in *Craft*, part of that ALJ's error was a failure to "note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine." 539 F.3d at 679. In contrast, the ALJ in this matter plainly observes that "[t]he claimant reported that he has not has [sic] treatment due to lack of insurance" and that Young "has been homeless for much of the relevant time." [R. at 28]. Thus, even if the ALJ had made an inference, it is not clear that the ALJ erred under the *Craft* standard, as she was clearly aware of the reasons set for in the record to explain the dearth of medical evidence and use of prescribed treatment. Accordingly, the ALJ's credibility determination was not patently erroneous, and remand is not appropriate.[2]

---

[2] Although Young argues at length regarding his credibility, it is not entirely clear which statements Young believes the ALJ should have found credible. In the argument section in his brief in support of his complaint, the only functionality statements cited by Young are that he "testified that he can only sit for 15-20 minutes . . . and he can only lift five to ten pounds before he experiences pain." [Dkt. 20 at 9 (internal citations omitted).] However, the ALJ clearly addressed these factual allegations in his RFC assessment:

> Dr. Corcoran opined the claimant could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand or walk six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. **I find this opinion generally credible, but have further limited the claimant to sitting two hours consecutively, and walking two hours consecutively, for a total of six hours each in an eight-hour workday, <u>in consideration of the claimant's subjective symptoms</u>**.

[R. at 29.] Thus, the ALJ considered Young's allegations regarding his ability to sit and lift.

## V. Conclusion

For the aforementioned reasons, substantial evidence supports the ALJ's determination that Young is disabled, pursuant to the Social Security Act, and the Commissioner's decision should therefore be **AFFIRMED**.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  12/29/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

---

Meanwhile, in Young's discussion of his testimony in the fact section of his brief in support of his complaint, Young discusses his poor vision at length, noting that he "can read a book or newspaper if it is in large print for about five minutes before things start going blurry" and "he can use his eye for ten to fifteen minutes at most before the blurred vision begins." [Dkt. 20 at 4.] Most significantly, Young added that **"[h]e believes since his eye exam in February 2011, his left eye has gotten worse**." [*Id.* (emphasis added)]  This statement seems to imply that Young may have intended to raise an argument alleging that the ALJ should have sought an updated vision consultation and/or should have given greater weight to Young's testimony regarding his vision.  However, this argument was not identified or developed by Young himself, and it is therefore waived.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Additionally, had Young raised this argument, the attempt would not have been successful, as the decision to seek an updated medical opinion lies squarely within the ALJ's discretion. *See* S.S.R. 96-6p.